# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JUDITH DREW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION No. 5:17-CV-149 (MTT) |
| | ) |
| MAMARONECK CAPITAL, LLC and | ) |
| MCCULLOUGH PAYNE HAAN & | ) |
| NADLER, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

In this Fair Debt Collection Practices Act ("FDCPA") case, the parties have reached a settlement, and, pursuant to their joint "Amended Notice of Settlement," Defendants Mamaroneck Capital, LLC and McCullough Payne Haan & Nadler, LLC agreed to pay Plaintiff Judith Drew's reasonable attorney's fees and costs. Docs. 35; 36. But because the parties could not agree on attorney's fees and costs, the Plaintiff has moved for attorney's fees in the amount of $28,930.00 and costs in the amount of $713.50.[1] Docs. 37; 41. The Defendants argue the Plaintiff is only entitled to $7,012.50 in attorney's fees, "which is in line with similar fee awards for similar cases in the Middle

---

[1] Initially, the Plaintiff requested $29,579.30: $28,866.00 in attorney's fees (50.3 hours at $275 per hour + 54.7 hours at 275 per hour) and $713.30 in costs. Doc. 37 at 2-3. In her reply brief, the Plaintiff notes that the billable hours have been reduced by 10.3 hours "to a total of 94.7 hours in an attempt to cull out entries Defendants feel are overly redundant, administrative, or clerical in nature." Doc. 41 at 8. Thus, the Plaintiff now seeks $29,643.50: $26,042.50 in attorney's fees through the filing of the Plaintiff's initial motion (94.7 hours at $275 per hour), an award of $2,887.50 for the filing of the reply brief (10.5 hours at $275 per hour), and $713.50 in costs. *Id.* at 10.

District of Georgia."² Doc. 39 at 24. For the following reasons, the Court concludes the Plaintiff should be awarded $19,635.00 in fees and $713.50 in costs. Accordingly, the Defendants are **ORDERED** to pay the Plaintiff $20,348.50.

## I. BACKGROUND

On April 18, 2017, the Plaintiff filed this action, alleging that the Defendants violated multiple provisions of the FDCPA and that the Defendants were negligent. Doc. 1 ¶¶ 81-98. In response, the Defendants moved to dismiss for improper venue, insufficient service of process, and failure to state a claim. Doc. 7-1 at 2. The Defendants also moved to stay discovery and pretrial deadlines pending a ruling on their motion to dismiss. Doc. 8. On June 2, 2017, the Plaintiff filed an amended complaint, which was nearly identical to her initial complaint with the main exception that Defendant Mamaroneck was correctly identified, for purposes of service of process, as a limited liability company based in Delaware, not New York. *Compare* Doc. 1 ¶¶ 8-9, *with* Doc. 14 ¶¶ 8-9. Subsequently, the Court denied the Defendants' motions as moot but allowed them to renew their motions, which they did.³ Docs. 16-19.

On September 12, 2017, the Court entered an Order granting in part and denying in part the Defendants' motion to dismiss. Doc. 25. On September 26, 2017, the Defendants filed their answer to the Plaintiff's amended complaint. Docs. 28; 29. Counsel for the Defendants then filed a motion to withdraw from the case, which the Court granted on October 13, 2017. Doc. 33. On October 16, 2017, the Court entered its scheduling and discovery order. Doc. 34.

---

² It does not appear the Defendants dispute the amount of $713.50 in costs.

³ In their renewed motion to dismiss, the Defendants no longer moved to dismiss on grounds of improper venue but still argued improper service and failure to state a claim. *See* Doc. 18-1 at 1-2.

About three months later, the parties filed a notice of settlement and an amended notice of settlement, advising the Court that "they have agreed to settle the claims" and that they "shall reach an agreement as to Plaintiff's attorney[']s fees and expenses of litigation within thirty days of the filing of this Notice of Settlement." Docs. 35; 36. Because the parties could not reach an agreement within that time period, the Plaintiff has moved for attorney's fees and costs. Doc. 37.

## II. DISCUSSION

### A. Attorney's Fees and Costs Standard

"[T]he costs of the action, together with a reasonable attorney's fee as determined by the court," are available for prevailing plaintiffs under the FDCPA. 15 U.S.C. § 1692k(a)(3). "The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation and quotation marks omitted).[4] This number is called the "lodestar," and "there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id.* (citation and quotation marks omitted). The district court should exclude "hours that were not reasonably expended," such as work that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In determining whether a lodestar is reasonable, the district court should consider twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*: (1) the time

---

[4] In *Bivins*, the district court had determined attorney's fees under § 1988, not the FDCPA. *Bivins*, 548 F.3d at 1350. But the Supreme Court has observed that Congress generally patterns attorney's fees provisions of new statutes on those provisions of pre-existing statutes and "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (citations omitted).

and labor required, (2) the novelty and difficulty, (3) the skill required to perform the legal service properly, (4) the opportunity cost of the attorney's inability to work on other cases as a result of accepting this one, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of money at issue and the results obtained, (9) the experience and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) attorney's fee awards in similar cases. 488 F.2d 714, 717-19 (5th Cir. 1974)[5]; *overruled on other grounds by Blancher v. Bergeron*, 489 U.S. 87 (1989); *see also Blancher*, 489 U.S. at 92 ("*Johnson*'s 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees."). Downward adjustment of the lodestar is "merited only if the prevailing party was partially successful in its efforts," a determination the district court makes on a case-by-case basis. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

The Plaintiff documents her counsel's work in affidavits and attached time summaries. Docs. 37-2; 37-3; 37-4; 37-5; 41-1; 41-2; 41-4. The Defendants do not contest the availability of attorney's fees and costs. *See generally* Doc. 39. Rather, the Defendants contend that the Plaintiff's request for attorney's fees is unreasonable because (1) there is no evidence that the Plaintiff's counsel's rate of $275 per hour is in line with prevailing market rates; (2) some of the tasks for which the Plaintiff's counsel billed were excessive, duplicative, administrative or otherwise unnecessary; (3) there is no recovery for unsuccessful attempts to overturn the underlying judgment and pleading

---

[5] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

errors; (4) some of the billing entries were vague or misleading "block billing" entries; and (5) the Plaintiff's counsel may not recover for fees billed after entry of the settlement agreement. *See generally id.* The Court will address these arguments in turn, considering the general appropriateness of the Plaintiff's requested award and examining the reasonableness of each contested task.

**B.     Reasonable Hourly Rate**

First, the Defendants argue that the Plaintiff's counsel's rate of $275 per hour is not reasonable. Doc. 39 at 4. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quotation marks and citation omitted). Satisfactory evidence is "more than the affidavit of the attorney performing the work." *Id.* (quotation marks and citation omitted).

Here, the Defendants contend the hourly rate should be reduced to $250 per hour because that rate "was deemed reasonable by this court for both of the same counsel, and the same relevant legal community of the Macon Division of the Middle District of Georgia," in another case before the Court covering approximately the same time period as this case.[6] Doc. 39 at 5. The Defendants also argue that the Plaintiff's counsel have not submitted any independent evidence to show that $275 per hour is

---

[6] The Plaintiff and her counsel "readily concede this court awarded a lower hourly rate in [the other case]." Doc. 41 at 2 n.8.

actually reasonable.[7]  *Id.* at 5-6.  While it is true this Court as well as other courts in FDCPA cases have deemed reasonable a rate of $250 per hour, that alone is not determinative.  *Norman*, 836 F.2d at 1299-1300 ("In evaluating comparability of the market rates being attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court.").  Relying on a national survey as their independent evidence that $275 per hour is reasonable, the Plaintiff's counsel claim "the reasonable hourly rate for handling consumer rights claims in this Court for attorneys with four to five years of experience in consumer rights litigation is between $295.00 an hour and $325.00 an hour."  Doc. 41 at 2-3.  Both of the Plaintiff's counsel have been practicing law in Georgia since November 2012, litigating a significant number of consumer cases.  Doc. 37-1 at 6-7.  As the Defendants acknowledge, the Plaintiff's counsel are "seasoned" attorneys.  Doc. 39 at 8.  The Plaintiff's counsel also note that based on their research, no plaintiff "had ever maintained a claim against a defendant in an FDCPA action based on sending a letter to an inconvenient (but valid) mailing address," and thus they potentially had to create new law in prosecuting this action.  Doc. 41 at 3.  Accordingly, the Court concludes an hourly rate of $275.00 is within the range of reasonable rates in the relevant legal market, particularly given the

---

[7] The Defendants also point out that the Plaintiff's counsel initially presented them with an hourly rate of $250 per hour "in an attempt to negotiate before presenting the issue to the court."  Doc. 39 at 6.  First, as the Plaintiff's reply brief makes clear, the Defendants, by not responding to her initial request, made no good faith attempt at negotiating before presenting the issue of attorney's fees to the Court.  Doc. 41 at 1-2.  Moreover, the fact that the Plaintiff's counsel previously presented a lower hourly rate, in an effort to *settle*, has no bearing on requesting an hourly rate of $275 per hour, so long as that rate is reasonable.  As discussed below, the Court finds that it is.

- 6 -

counsel's years of experience litigating FDCPA cases and the novelty of the Plaintiff's case.

**C.     Reasonable Hours Expended**

The Court finds that the best way to determine the reasonableness of the Plaintiff's request is to consider the specific hours expended on certain tasks. *See Bivins*, 548 at 1350 ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." (citation omitted)).

**1. Excessive, duplicative, administrative, or otherwise unnecessary tasks**

The Defendants argue that they "should not have to pay for the 21.7 hours of billing entries for work that is duplicative, administrative, or excessive." Doc. 39 at 6-7; *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ."). According to the Defendants, the Plaintiff "redundantly and excessively billed five (5) different times for researching how to serve Defendants" for a total of 13.1 hours, when it only should have taken one hour of legal research on a simple service issue. *Id.* at 7-8. The Court disagrees. As the Plaintiff's counsel point out, these additional hours were expended due to not only the difficulty in finding the proper party to serve but also the Defendants' own conduct. Doc. 41 at 4. Considering how both parties believed Defendant Mamaroneck was a New York limited liability company, when there was actually another company with the same name based in Delaware, only confirms that Defendant Mamaroneck's corporate structure and registered agent were not easily identifiable or ascertainable. Thus, it was certainly

reasonable to spend more than an hour trying to determine which Mamaroneck to serve. The other hours that the Defendants contest as being duplicative or excessive were expended in response to the Defendants' motion to dismiss for insufficiency of service. Of course, because the Defendants raised the issue of improper service, it is expected that the Plaintiff's counsel would review the motion to dismiss, conduct further research on the service issue, and draft a response. Further research regarding the service issue is not duplicative, under the circumstances, particularly given the Defendants failed to correct the Plaintiff that Mamaroneck was not a New York limited liability company. Doc. 7-1 at 3. Only after the Plaintiff's counsel conducted further research, including speaking over the phone with an attorney from New York who represented the other "Mamaroneck," were the parties able to learn that there were two "Mamaronecks," one a real estate company and the other a debt collection company. Doc. 41 at 4. Accordingly, the five billing entries totaling 13.1 hours are reasonable.

The Defendants also contest the 4.7 hours expended on PACER research of the Defendants' previous answers and disclosures, arguing that researching the Defendants' filings in other cases is not relevant to the present case, and, thus, is unnecessary. Doc. 39 at 8. In response, the Plaintiff's counsel state that this research "could have yielded admissible evidence, as courts have routinely held that pleadings from prior cases are admissible evidence at trial." Doc. 41 at 6. The Court agrees with the Plaintiff's counsel. Researching an opposing party is laudable, and the Court has no doubt the Defendants conducted their own research on the Plaintiff and her counsel, or at least they should have. Accordingly, the Court finds that the claim for 4.7 hours spent researching the Defendants' previous answers and disclosures is reasonable.

The Defendants also argue that the Plaintiff's counsel should not recover for the 0.8 hours researching the effect of settlement versus judgment on a fee petition because that is not related to FDCPA claims and "an offer of judgment was never on the table from the Defendants." Doc. 39 at 8-9. Counsel for the Plaintiff respond that "it is not unreasonable for [them] to research potential resolutions to a case." Doc. 41 at 6. The Court agrees with the Plaintiff's counsel. Accordingly, the claim for 0.8 hours spent researching the effect of settlement as opposed to an offer of judgment is reasonable.

Next, the Defendants point to three billing entries related to the settlement offer and argue that the Plaintiff's counsel billed 0.3 hours for these "same tasks." Doc. 39 at 9. However, as the Plaintiff's counsel point out, while the settlement offers were similar, they were not the same, and the Defendants fail to acknowledge that at the time of each entry, "the prior offer of settlement had expired, necessitating an update to the new offer of settlement." Doc. 41 at 5. Accordingly, the claim for 0.3 hours expended on proposing and updating the settlement offer is reasonable.

The Defendants also contend that the Plaintiff's counsel "spent an excessive amount of time on 'researching claims and drafting the complaint.'" Doc. 39 at 9 (quoting the description of the task in the initial time summary). In particular, the Plaintiff's counsel spent a total of 6.8 hours on this task, and the Defendants argue this amounts to "block billing, with no breakdown of the time spent on each." *Id.* Moreover, the Defendants contend that the "issues in this case were not especially complex, and given that Plaintiff's counsel practice primarily in this area and have filed hundreds of similar complaints, it is reasonable to assume that this Complaint was a standard

document used by Plaintiff's counsel and their firms." *Id.* at 9-10.  Thus, according to the Defendants, the fee entry should be reduced to at most 3 hours.  *Id.* at 10.  In response, the Plaintiff's counsel have provided a supplemental time summary, which provides more detail to many of the entries contested by the Defendants.  *See generally* Doc. 41-1.  With regard to the entry of "researching claims and drafting the complaint," the Plaintiff's counsel provided the following amendment:  "Conducted research as to whether viable 1692c claim based on the facts and found no similar cases reported (1.8); reviewed CFPB order regarding Georgia Recieveables [sic] to see if any claim existed thereunder to pursue against Defendants in this suit (.5); drafted complaint (4.5)."  *Id.* at 1.  This amendment sufficiently breaks down the time spent on each task; thus, it adequately addresses the Defendants' block billing concern.  The Court also does not find that the Plaintiff's counsel "spent an excessive amount of time researching claims and drafting the complaint."  While counsel for the Plaintiff may have used standard forms to draft their complaint, it is clear the majority of the initial complaint, as well as the amended complaint, contain a highly fact-specific sequence of events that could not have come from common pleadings previously used by the Plaintiff's counsel. *See generally* Docs. 1; 14.  Moreover, as the Plaintiff's counsel note, they have "ensure[d] there is both a factual and legal basis before filing pleadings and the time entries reflect the time counsel expended in fulfilling these obligations."  Doc. 41 at 5 n.20.  Accordingly, the Court finds that the Plaintiff's claim for 6.8 hours is reasonable for researching claims and drafting the complaint.

The Defendants also argue that the Plaintiff's counsel are not entitled to recover 6.2 hours for performing tasks that are administrative or clerical in nature.  Doc. 39 at 9;

see *Fischer v. Berryhill*, 2017 WL 1078446, at *3 (N.D. Fla. Feb. 21, 2017), *report and recommendation adopted*, 2017 WL 1074934 (N.D. Fla. Mar. 21, 2017) (finding that costs of a clerical nature are not compensable as attorney's fees). The Defendants point out that the Plaintiff's counsel billed multiple times for "mailing, filing, or otherwise delivering documents." *Id.* at 11. These are indeed administrative tasks that cannot be recovered. Realizing as much, the Plaintiff's counsel have, in their supplemental time summary, reduced, either partially or entirely, most of these contested tasks. *See generally* Doc. 41-1. The Court accepts the reductions as reasonable. However, there are still some entries involving administrative or clerical tasks for which the Plaintiff's counsel should not have billed. They are: "File response to MTD and Motion to Stay again" (0.2); "Provide .doc of agreement to OC per her request" (0.1); "Scan and send agreement to OC" (0.2); and "File notice of settlement" (0.1). Accordingly, in addition to the hours that the Plaintiff's counsel reduced in their supplemental time summary for performing administrative tasks, the Court finds reasonable a reduction of 0.6 hours. Doc. 41 at 8.

**2. Attempts to overturn underlying judgment and correct pleading errors**

The Defendants argue the Plaintiff's counsel may not recover for their unsuccessful efforts to overturn the underlying debt and cite *Norman* for the proposition that a district court "must deduct time spent on discrete and unsuccessful claims." Doc. 39 at 13. (quoting *Norman*, 836 F.2d at 1302). If some of the claims are unsuccessful, the district court may either attempt to identify specific hours spent on unsuccessful claims or reduce the award by some proportion. *Norman*, 836 F.2d at 1302 (citation omitted). The Defendants contend that the 4.7 hours spent on researching claims

under O.C.G.A. § 9-11-60 for setting aside judgment were unreasonable because those claims were never raised and, even if they were, they would have been unsuccessful.[8] Doc. 39 at 14. The Plaintiff's counsel acknowledge that they eventually made no effort to set aside the underlying judgment; however, they argue that the underlying judgment was "necessarily intertwined" with the prosecution of the FDCPA case, which justifies researching those claims. Doc. 41 at 6-7. The Court agrees that the underlying judgment is related to bringing the FDCPA claims, and while the claims under § 9-11-60 were eventually never raised, it certainly was reasonable to research whether setting aside a state court judgment was viable or necessary before considering other options. Accordingly, the Court finds reasonable the 4.7 hours spent on researching claims under § 9-11-60.

The Defendants make a similar argument that the Plaintiff's counsel may not fully recover for researching claims that were dismissed as a matter of law for failure to state a claim. Doc. 39 at 14; *see generally* Doc. 25. According to the Defendants, they "should not be required to pay for legal services on claims that failed," and, thus, a 50% across-the-board reduction should be applied to the requested award. Doc. 39 at 14. While it is true some of the Plaintiff's claims were dismissed, counsel's work on an unsuccessful claim may still be recoverable if it is related to their work on another, successful claim. *See Hensley*, 461 U.S. at 434-35. As the Plaintiff's counsel correctly point out, all of the claims raised in the Plaintiff's initial complaint and amended

---

[8] The Defendants also ask the Court to "completely remove the 0.1 [hour] email to opposing counsel regarding the underlying judgment from Plaintiff's recovery, as this is not relevant to the FDCPA claim asserted." Doc. 39 at 14. But as the Court mentions below, the underlying judgment *is* relevant to the prosecution of the Plaintiff's FDCPA claim. Accordingly, the 0.1 hour spent in drafting and sending the email is reasonable.

complaint were interrelated and arose out of a common nucleus of facts. Doc. 41 at 9. But given that the Defendants were able to dismiss three out of the Plaintiff's five claims, it seems reasonable, and the Plaintiff's counsel do not oppose, an across-the-board reduction of 25% of the award sought.[9] Doc. 41 at 10 n.33; *Hensley*, 461 U.S. at 436-37 ("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

The Defendants also argue that the Plaintiff's counsel may not recover for the time spent responding to the Defendants' initial motion to dismiss because that motion was "entirely successful" due to the Plaintiff's counsel "amending their complaint to correct the errors." Doc. 39 at 14-15. Specifically, the Defendants contest the 9.8 hours expended on responding to the initial motion to dismiss and drafting the amended complaint. *Id.* at 15. It is far from clear what the Defendants mean by their motion being "entirely successful," particularly given that their initial motion to dismiss and renewed motion to dismiss were nearly identical and the amended complaint mainly corrected the service issue with respect to Mamaroneck and clarified that the Plaintiff was bringing a claim under 15 U.S.C. § 1692f. *Compare* Doc. 7-1, *with* Doc. 18-1; *compare* Doc. 1 ¶¶ 8-9, 88, *with* Doc. 14 ¶¶ 8-9, 88. It seems the Defendants' better

---

[9] As noted below, the Court applies the 25% reduction to the award after first adjusting the award for the reasons discussed throughout this Order.

argument is that the Plaintiff's counsel may not recover for the 11.9 hours spent responding to the *second* motion to dismiss or the 2.3 hours spent drafting the amended complaint. Perhaps realizing this, the Plaintiff's counsel, in their supplemental time summary, reduced the number of hours drafting the amended complaint from 2.3 hours to 1.5 hours and reduced the number of hours drafting a response to the second motion to stay and second motion to dismiss from 3.5 hours to 2 hours and 8.4 hours to 5.4 hours, respectively. Doc. 41-1 at 3. While the Court accepts as reasonable the 0.8-hour reduction in time for drafting the amended complaint, the Court does not find reasonable counsel's modified time for responding to the Defendants' second motion to stay and dismiss, considering the Plaintiff's counsel already claimed to have expended 6.3 hours researching issues raised by the initial motion to dismiss, practically the same issues raised in the second motion to dismiss. Accordingly, the Court reduces counsel's modified time by 4.4 hours and finds reasonable a total of 3 hours spent responding to the Defendants' second motion to stay and dismiss.

### 3. Vague and misleading billing entries

The Defendants also argue that the Plaintiff's counsel "should not be allowed to recover for 10.0 hours of vague billing entries." Doc. 39 at 17. While some of the entries in the initial time summary were vague, the Plaintiff's counsel have, in their supplemental time summary, described the contested entries in more detail and reduced the time in one particular entry, "get agreement signed by Drew," by 1.2 hours to address the Defendants' concern. *See generally* Doc. 41-1. The Court accepts

these supplemental descriptions and reduction in time and finds reasonable the remaining 8.8 hours of billing entries as reflected in the supplemental time summary.[10]

Though the Defendants also contend that the Plaintiff's counsel should only recover 50% of the misleading "block billing" entries, the Court finds that the supplemental time summary has addressed most of these "block billing" concerns. As to the entries in the supplemental time summary that remain unchanged from those contested as "block billed" in the initial time summary, the Court finds no issue, with the exception of the entries that the Court has already found unreasonable.

**4. Billing entries after entry of settlement agreement**

Finally, the Defendants argue there should be no recovery for fees billed after entry of the settlement agreement because it was "not contemplated in the settlement that Plaintiff's counsel would seek or recover fees for their Motion for Attorney's fees." Doc. 39 at 21-22. That argument is unavailing. While the Amended Notice of Settlement is silent as to whether fees and costs end upon the effective date of the settlement, it does state that "[s]hould the parties be unable to reach an agreement as to the amount of Plaintiff's attorney[']s fees and expenses of litigation, the Plaintiff will file a Motion for Fees and Costs. . . ." Doc. 36 at 1. Based on this, it seems clear that the Defendants could reasonably anticipate the Plaintiff's counsel having to expend additional time researching and drafting a fee petition should the parties fail to come to

---

[10] The Defendants also argue that the Plaintiff's counsel expended too much time (a total of 2.1 hours) on phone calls with their client. Doc. 39 at 18. But as the Plaintiff's counsel explain in their reply brief, the Plaintiff is an unsophisticated consumer, lacking reliable transportation and often requiring counsel to travel to meet with her. Doc. 41 at 5. Accordingly, the Court finds the 2.1 hours reasonable. The Court also finds reasonable the time conversing with the opposing counsel, because this was done to further represent the Plaintiff's needs.

an agreement on attorney's fees and costs.  That is what happened here.[11]

Accordingly, the Court finds that the Plaintiff's counsel may recover for fees billed after entry of the settlement agreement.

However, the Court does not find reasonable the total amount of fees billed after the parties' settlement.  While the Court finds no issue with co-counsels reviewing each other's work, it seems the amount of time (8.1 hours) spent researching and drafting the fee petition is excessive, especially given that the Plaintiff's counsel have likely used standard forms to file fee petitions in other similar cases.  Accordingly, the Court finds reasonable 6.1 hours for researching and drafting the fee petition.

The Plaintiff's counsel have also billed for time expended (10.5 hours) on responding to the Defendants' brief.  *See generally* Doc. 41-2.  Again, the Court finds the total amount claimed to be excessive and instead finds reasonable 7.5 hours for responding to the Defendants' brief.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Attorney's Fees (Doc. 37) is **GRANTED in part** and **DENIED in part**.  The Court finds that the Plaintiff's request should be reduced by 10 hours followed by a 25% reduction.  The Defendants owe the Plaintiff $19,635.00 in reasonable attorney's fees (95.2 hours at $275 per hour (1 – 0.25)) and $713.50 in reasonable costs.  Accordingly, the Defendants are **ORDERED** to pay the Plaintiff $20,348.50.

---

[11] The Plaintiff's counsel point out that they sent their initial itemized billing records to the Defendants on January 22, 2018.  Doc. 41 at 1.  Counsel then "followed up with Defendants regarding the itemized billing statement, indicating Plaintiff was willing to reduce fees and costs to $20,000.00." *Id.*  However, according to the Plaintiff's counsel, the Defendants were nonresponsive.  Thus, again, it appears the Plaintiff's counsel have made efforts to negotiate while the Defendants have not.

**SO ORDERED**, this 2nd day of July, 2018.

                                      <u>S/ Marc T. Treadwell</u>
                                      MARC T. TREADWELL, JUDGE
                                      UNITED STATES DISTRICT COURT